United States District Court
Southern District of Texas
**ENTERED**
January 08, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

REGINA PATRICK,                          §
                                         §
            Plaintiff,                   §
                                         §
v.                                       §     CIVIL ACTION NO. H-20-2352
                                         §
COMCAST CABLE COMMUNICATIONS,            §
LLC,                                     §
                                         §
            Defendant.                   §

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Regina Patrick ("Plaintiff") sued Comcast Holdings Corporation in this court for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, <u>et seq.</u> (the "TCPA") and the Texas Debt Collection Act, Tex. Fin. Code Ann. § 392, <u>et seq.</u> (the "TDCA").[1]  On October 16, 2020, Plaintiff filed her First Amended Complaint (Docket Entry No. 19) naming Comcast Cable Communications, LLC ("Defendant") as the defendant.[2]  Pending before the court is Comcast's Motion to Compel Arbitration and Unopposed Motion to Stay Litigation Pending Ruling Thereon ("Defendant's Motion") (Docket Entry No. 23).  For the reasons

---

[1]Complaint, Docket Entry No. 1, p. 1.  All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]First Amended Complaint with Jury Demand against Comcast Cable Communications, LLC, Docket Entry No. 19.

explained below, Defendant's Motion will be granted and this case will be dismissed.

## I.   Factual and Procedural Background

The following facts are not disputed.  Plaintiff opened a Comcast account for residential cable, phone, and internet services on or about February 20, 2012.[3]  Plaintiff provided Comcast with a phone number ending in 1177 in connection with her account.[4]  On February 23, 2012, a technician visited Plaintiff's home to install the Comcast equipment and activate her services.[5]  At that time it was Comcast's routine and regular business practice for its technicians to provide all new subscribers with a Comcast Welcome Kit when a technician performed a professional installation.[6]  The Welcome Kit included a copy of the applicable Subscriber Agreement ("Agreement").[7]   Comcast periodically updates its Subscriber Agreement and has continuously made a current version available on its website since at least February of 2012.[8]

---

[3]See Declaration of Colin M. Padgett ("Padgett Declaration), Exhibit A to Defendant's Motion, Docket Entry No. 23-2, pp. 2-3 ¶ 5.

[4]Id. at 3 ¶ 6.

[5]Id. ¶ 7.

[6]Id. ¶ 9.

[7]Id. (Comcast Agreement for Residential Services, Exhibit A-1 to Padgett Declaration, Docket Entry No. 23-3).

[8]Id. ¶ 10.

The Agreement stated on its first page under GENERAL TERMS AND CONDITIONS in bold letters: "You will have accepted this Agreement and be bound by its terms if you use the Services or otherwise indicate your affirmative acceptance of such terms."[9]  The Agreement further stated under the heading "BINDING ARBITRATION": "If you have a Dispute (as defined below) with Comcast that cannot be resolved through an informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court."[10]  The Arbitration Provision defined "Dispute" as follows:

> The term "Dispute" means any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or any other legal or equitable theory, and <u>includes the validity, enforceability or scope of this Arbitration Provision.</u> "Dispute" is to be given the broadest possible meaning that will be enforced.

Agreement, Docket Entry No. 23-3, pp. 15-16 ¶ 13(b) (emphasis added).

The Arbitration Provision explained that arbitration would be governed by the Federal Arbitration Act,[11] that it would be

---

[9]Agreement, Docket Entry No. 23-3, p. 2 ¶ 1.

[10]<u>Id.</u> at 15 ¶ 13(a).

[11]<u>Id.</u> at 16 ¶ 13(e).

administered by the American Arbitration Association ("AAA"),[12] and that it would occur "at a location convenient to you in the area where you receive the service from us."[13]   It also provided that it "shall survive the termination of your Service(s) with Comcast."[14] The Agreement allowed Plaintiff to opt out of the Arbitration Provision within thirty days of the account activation if she did not wish to resolve disputes with Comcast through arbitration, and it stated that opting out would have no effect on Plaintiff's relationship with Comcast or the services Comcast provided her.[15] Plaintiff did not exercise her right to timely opt out.[16]

Plaintiff canceled her Comcast account on or about July 22, 2013.[17]   On July 2, 2020, Plaintiff filed this action against Comcast Holdings Corporation for alleged violations of the TCPA and the TDCA.[18]   Plaintiff alleged in her Complaint that "[w]ithin the last year, Comcast began calling Plaintiff at her cellular telephone, number 832-xxx-1177."[19]   Plaintiff further alleged that

---

[12]Id.

[13]Id. at 17 ¶ 13(g).

[14]Id. ¶ 13(k).

[15]Id. at 16 ¶ 13(c).

[16]Padgett Declaration, Docket Entry No. 23-2, p. 3 ¶ 12.

[17]Id. ¶ 8.

[18]Complaint, Docket Entry No. 1, p. 1 ¶ 1.

[19]Id. at 2 ¶ 5.

on or about October 21, 2019, "Plaintiff told Comcast to stop calls to her cellular telephone number,"[20] but that "[n]onetheless, Comcast continued to place automated calls to Plaintiff's cellular telephone."[21]

On October 21, 2020, Defendant filed the pending Motion to Compel Arbitration contending that this action must be dismissed and compelled to arbitration because Plaintiff entered a binding arbitration agreement with Comcast and because that agreement "delegates to the arbitrator any dispute over the validity, enforceability, or scope of the arbitration agreement."[22] Plaintiff filed a response on October 29, 2020,[23] and Defendant replied on November 5, 2020.[24]

## II.  <u>Legal Standard</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, <u>et seq.</u>, creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." <u>Moses H. Cone Memorial Hospital v. Mercury Construction</u>

---

[20]<u>Id.</u> ¶ 10.

[21]<u>Id.</u> ¶ 11.

[22]Defendant's Motion, Docket Entry No. 23, p. 1.

[23]Plaintiff's Response to Comcast's Motion to Compel Arbitration and Unopposed Motion to Stay Litigation Pending Ruling Thereon ("Plaintiff's Response"), Docket Entry No. 26.

[24]Comcast's Reply in Support of Motion to Compel Arbitration and Unopposed Motion to Stay Litigation Pending Ruling Thereon ("Defendant's Reply"), Docket Entry No. 27.

Corp., 103 S. Ct. 927, 941 (1983) (citing <u>Prima Paint Corp. v.</u>
<u>Flood & Conklin Manufacturing Corp.</u>, 87 S. Ct. 1801 (1967)).

"[W]hen a court interprets [] provisions in an agreement
covered by the FAA, 'due regard must be given to the federal policy
favoring arbitration, and ambiguities as to the scope of the
arbitration clause itself resolved in favor of arbitration.'"
<u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 115 S. Ct. 1212, 1218
(1995) (quoting <u>Volt Information Sciences, Inc. v. Board of</u>
<u>Trustees of Leland Stanford Junior University</u>, 109 S. Ct. 1248,
1255 (1989)).

Section 2 of the FAA states that a written arbitration
agreement in any contract involving interstate commerce is valid,
irrevocable, and enforceable except on grounds that would permit
the revocation of a contract in law or equity.  9 U.S.C. § 2.
Section 4 of the FAA permits a party to seek an order compelling
arbitration if the other party has failed to arbitrate under a
written agreement.  9 U.S.C. § 4.

Courts typically apply a two-step inquiry when ruling on a
motion to compel arbitration.  <u>Edwards v. Doordash, Inc.</u>, 888 F.3d
738, 743 (5th Cir. 2018).  "First, the court asks whether there is
a valid agreement to arbitrate and, second, whether the current
dispute falls within the scope of a valid agreement."  <u>Id.</u>  This
framework changes if the arbitration agreement delegates questions
of arbitrability to the arbitrator:  "If the party seeking
arbitration argues that there is a delegation clause, the court

-6-

performs the first step — an analysis of contract formation — [b]ut the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause." <u>Id.</u> at 743-44 (internal quotations and citations omitted). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." <u>Id.</u> at 744 (quoting <u>Kubala v. Supreme Production Services, Inc.,</u> 830 F.3d 199, 202 (5th Cir. 2016)).

### III.   <u>Analysis</u>

Defendant asserts that Plaintiff entered into a valid arbitration agreement with Comcast and that said agreement included a delegation clause.[25]  Plaintiff does not dispute the validity of the agreement to arbitrate.  Plaintiff also states that she "agrees with Defendant that an Arbitrator should decide the scope of arbitrable claims under the agreement Comcast seeks to enforce . . . ."[26]  Because Plaintiff no longer disputes that the issue of arbitrability is delegated to the arbitrator, the two-step <u>Edwards</u> framework requires the court to compel arbitration.  <u>See</u> 888 F.3d at 743-44.

The only remaining issue is whether to stay or dismiss the case.  "When all issues before the court must be submitted to an arbitrator, the court has discretion to dismiss the action."  <u>CHG</u>

---

[25]Defendant's Motion, Docket Entry No. 23, p. 1.

[26]Plaintiff's Response, Docket Entry No. 26, p. 2.

-7-

<u>Hospital Houston LLC v. Blue Cross Blue Shield of Texas</u>, Civil
Action No. H-20-0718, 2020 WL 4904639, at *5 (S.D. Tex. Aug. 20,
2020) (citing <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161,
1164 (5th Cir. 1992)).  "The weight of authority clearly supports
dismissal of the case when <u>all</u> of the issues raised in the district
court must be submitted to arbitration." <u>Alford,</u> 975 F.2d at 1164
(emphasis in original).

Plaintiff argues that "if the Arbitrator ultimately decides
that Plaintiff's claims fall outside the scope of the arbitration
clause, the case will be sent back to the District Court."[27]
Plaintiff then asserts that her claim is not arbitrable and that an
arbitrator would agree:  "[G]iven the likelihood that an Arbitrator
will ultimately decide that Plaintiff's claims are not covered by
the arbitration agreement, this case should be stayed rather than
dismissed pending the Arbitrator's decision."[28]

Plaintiff misconstrues the standard set forth in the opinions
cited above.  The question before the court is not whether an
arbitrator would find this dispute arbitrable.  The only question
is whether the issue of arbitrability was delegated to the
arbitrator in the first place.  If it was, the court has "no
business" deciding on arbitrability.  <u>See Henry Schein, Inc. v.
Archer and White Sales, Inc.</u>, 139 S. Ct. 524, 530 (2019) ("Just as
a court may not decide a merits question that the parties have

---

[27]<u>Id.</u> at 3.

[28]<u>Id.</u> at 2.

delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."); see also CHG, 2020 WL 4904639, at *4 (confirming that the court "may only consider Plaintiff's arguments as to the scope of the Arbitration Clause if the parties have not delegated the issue to an arbitrator").

Plaintiff agrees that the question of arbitrability is delegated to the arbitrator.[29]  Moreover, the Agreement expressly requires the parties to arbitrate any dispute over "the validity, enforceability or scope of this Arbitration Provision."[30]  This language demonstrates the parties' clear and unmistakable intent to submit the arbitrability of disputes to an arbitrator.  The court thus concludes that all of the issues raised in the district court must be submitted to arbitration, and the weight of authority clearly supports dismissal.  See Alford, 975 F.2d at 1164.  For the reasons set forth above, Comcast's Motion to Compel Arbitration (Docket Entry No. 23) is **GRANTED**, and this action will be dismissed without prejudice.

**SIGNED** at Houston, Texas, on this 8th day of January, 2021.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[29]Plaintiff's Response, Docket Entry No. 26, p. 2.

[30]Agreement, Exhibit A-1 to Padgett Declaration, Docket Entry No. 23-3, pp. 15-16 ¶¶ 13(a) and (b).